# RESCRIPT OPINIONS.

NORTHGATE CONSTRUCTION CORPORATION vs. CITY OF FALL RIVER. June 1, 1981. The plaintiff (Northgate) on August 10, 1973, made a contract (the 1973 contract) with the defendant (Fall River) to construct a high school. The stipulated completion date was February 21, 1976. Various subcontracts were arranged for parts of the work. Because of delays, the project was not finished by the completion date. Northgate, by letter of September 10, 1976, to Fall River's commissioner of public works, asserted that the delays were caused by Fall River or its representatives and sought $1,313,415 for damages caused by delays and other amounts based on other claims. On October 28, 1976, Northgate notified Fall River that on November 5, 1976, it would stop all work on the school because Fall River had not paid in full Northgate's requisition for work in August, 1976, or any part of its September requisition and because of other failures by the city to comply with the 1973 contract. Northgate, on November 5, 1976, did send a letter terminating the contract and stating that it would hold Fall River liable for all breaches. Fall River replied, denying any breaches.

On December 21, 1976, Northgate and Fall River entered into a settlement, which provided (among other matters) as follows: (a) The 1973 contract was terminated. (b) Fall River paid Northgate $700,000 (subject to certain adjustments not now pertinent). (c) Mutual releases (excepting rights arising under the assignment agreement mentioned below) were exchanged by Fall River, Northgate, and the architect. (d) The project was to be completed by Northgate's (1) assigning its subcontracts to Fall River, and (2) supervising the completion as construction manager under an agreement dated December 21, 1976. Northgate duly performed that agreement and the assignment agreement next mentioned.

The agreement for the assignment of the subcontracts contained a provision reading, "Assignee [Fall River] . . . accepts the foregoing Assignment and agrees to . . . perform . . . all the terms, provisions, and conditions of said subcontracts to be performed . . . [by] the Assignor [Northgate] thereunder. Assignee hereby agrees to indemnify and hold harmless Assignor and Home Indemnity Co. [Northgate's surety] from . . . all claims, loss, cost, damage, and expense, including reasonable attorneys' fees, that Assignor or Home Indemnity Co. may incur or be called upon to pay, in respect to the subcontracts hereby assigned, whether such claims

. . . [etc.] arise out of events or causes of action occurring or accruing before or after this date . . . ." This assignment agreement was signed for Fall River by its mayor and building commissioner, and the city auditor certified "that an appropriation in the amount of this contract is available for payment."

After the settlement, four subcontractors filed suit against Northgate and its surety alleging claims based on their respective assigned subcontracts, and two subcontractors sought arbitration of such claims. Northgate demanded that Fall River defend these claims, which Fall River, acting through its corporation counsel, declined to do. Northgate, because of this refusal, filed third-party claims or cross claims against Fall River in the court cases and cross demands in the arbitration cases. Fall River still contends that the assignment agreement is invalid.

The present complaint for declaratory relief (G. L. c. 231A) alleged the facts already stated, which appear in a statement of agreed facts. The trial judge heard the case upon this statement and made findings based upon it. He correctly ruled (a) that the several agreements and releases represented in effect a settlement (supported by consideration) by Fall River, its architect, and Northgate of all claims then existing among them arising out of the 1973 contract, (b) that Northgate had fully performed its obligations under the settlement arrangements, (c) that Fall River has failed to perform its obligation to indemnify Northgate for claims made by Northgate's subcontractors, (d) that the assignment agreement was within Fall River's municipal authority and home rule authority (see art. 89, amending art. 2, of the Amendments to the Constitution of the Commonwealth) as an exercise of its power to settle claims and to act for the public benefit, and (e) that Fall River must indemnify Northgate and its surety against all claims covered by the assignment agreement. Judgment in accordance with these rulings was entered declaring that Fall River must thus indemnify Northgate and for attorneys' fees and costs already incurred ($5,592.10 as of February 20, 1980). Fall River appealed.

1. Fall River had power to enter into the original 1973 contract as part of its general authority to maintain schools. See G. L. c. 71, §§ 1, 4. See also G. L. c. 40, §§ 1, 4, 5, 21(1). The trial judge found that the 1973 contract was a valid, legal obligation of Fall River. Thus it must be taken to have been made in full compliance with public bidding statutes. See G. L. c. 149, § 44A et seq.

Fall River, as part of its general power to sue and be sued, has the inherent implied power to effect a settlement by compromise in good faith of genuine claims against it. *Prout* v. *Pittsfield Fire Dist.*, 154 Mass. 450, 451-453 (1891). The substantial character of Northgate's claims, indeed, was recognized by the city's architect in a letter dated November 2, 1976, shortly prior to the settlement, thus furnishing additional support for the trial judge's finding and ruling that there was adequate consideration. The city need not insist on litigating them with uncertain cost, difficulties,

and outcome.  See *Jones* v. *Natick*, 267 Mass. 567, 570 (1929).  This power existed prior to the Home Rule Amendment, art. 89 of the Amendments to the Constitution of the Commonwealth.  Nothing in that amendment or in any relevant statute has been shown to preclude exercise of the implied power.  See *Bloom* v. *Worcester*, 363 Mass. 136, 155-157 (1973); *Del Duca* v. *Town Admr. of Methuen*, 368 Mass. 1, 10-14 (1975).

2.  Fall River's counsel, in a brief which refers to no decided cases, apparently misconceives the settlement as a new construction agreement rather than as a prudent compromise of substantial claims under a previously existing, valid contract.  To the extent that G. L. c. 44, § 31C, inserted by St. 1964, c. 693, § 1, has any application to this compromise, the execution of the certificate under § 31C by the city auditor protects Northgate against any assertion by Fall River that the appropriation to meet payments under the settlement was not adequate.  See *Lawrence* v. *Falzarano*, 380 Mass. 18, 24-26 (1980).

3.  After the assignment agreement, Fall River was not forced to act as general contractor.  Without suggesting that this would have been objectionable in any respect, we think it clear that Fall River merely accepted assignment to it of Northgate's subcontracts, as they then existed.  It received their benefits and undertook Northgate's obligations under them.  By the construction manager's agreement, Northgate continued to coordinate the work.  Thus, Fall River was not required to assume onerous supervisory duties.  There is no showing that it or its taxpayers were caused any illegal or improper duties or burdens.  On the contrary, the settlement, so far as this record shows, appears to have been a favorable adjustment of a large claim.

*Judgment affirmed.*

*David J. Hatem* for the plaintiff.

*Daniel L. Viveiros*, Corporation Counsel, for the defendant, submitted a brief.