THOMAS O'CONNOR & CO., INC. *vs.* CITY OF MEDFORD.

Suffolk. January 12, 1983. — May 13, 1983.

Present: GREANEY, KAPLAN, & DREBEN, JJ.

*Municipal Corporations,* Contract, Municipal finance. *Contract,* Public works, With municipality, Performance and breach. *Damages,* Breach of contract. *Interest. Practice, Civil,* Master: report of evidence, findings.

An award of damages against a city for its breach of a valid construction contract in an amount in excess of the amount appropriated by the city for the contract was not a "liability incur[red]" within the meaning of G. L. c. 44, § 31, which would have relieved the city from liability in the absence of an additional appropriation. [11-14]

A defendant objecting to the report of a master failed to raise properly the issue whether the master's findings were supported by the evidence where, upon the master's declining to make summaries of the evidence, the defendant failed to comply with the procedure set forth in *Miller* v. *Winshall,* 9 Mass. App. Ct. 312 (1980), for supplying summaries of evidence to the judge for review of its claims. [14-16]

In an action against a city for its breach of a construction contract, the master's findings warranted his conclusion that the city failed in its contractual obligation to seasonably furnish needed plans to the plaintiff. [16]

In an action against a city for its breach of a construction contract, a master's findings as to the circumstances of the issuance of certain change orders extending the time for performance "at no change in contract price," alleged to have precluded an award of damages, showed that the change orders did not dispose of the plaintiff's claim of damages for disruption of its construction schedule. [16]

In an action against a city for breach of a construction contract, an opinion of a roofing contractor, relied upon by a master in concluding that defects in the installation of a school roof were caused by improper application of roofing materials by a subcontractor, thus entitling the city to a credit against an award of damages, was not only inconsistent with other findings of the master, but also, in view of those findings, was properly rejected by the judge as speculative. [16-17]

There was no merit to the claim by a city in an action against it for breach of a construction contract that the master, in assessing damages, added

to the direct costs for labor an improper percentage to cover workman's compensation, insurance, and other additional labor costs. [17-18]

In an action for damages against a city for breach of a construction contract, a master could permissibly add to direct costs an additional percentage covering overhead and superintendence costs; however, where the contract did not separate overhead and superintendence costs from profit, and where the master made no finding that the city's breach caused the contractor any specific loss of profit, his addition of a percentage figure which included profit was improper. [18]

Where, at the conclusion of litigation establishing that an amount was due a contractor under a construction contract with a city, the required semi-final estimate was not prepared by the city as required for the exercise of its rights under G. L. c. 30, § 39K, interest was properly awarded to the contractor under that section. [19]

BILL IN EQUITY filed in the Superior Court on December 29, 1972.

The suit was heard by *Garrity, J.*, on a master's report.

*Robert W. Blakeney* for the defendant.

*Steven J. Comen* for the plaintiff.

DREBEN, J. In 1967, the plaintiff, a general contractor, entered into a contract with the city of Medford (city) for the construction of a high school. The project took longer than anticipated, and the plaintiff claimed that deficiencies in the plans and other actions by the city disrupted the plaintiff's construction schedule, thereby causing the plaintiff substantial additional costs. The city urges several grounds for reversal of a judgment, based in large part on the findings of a master, awarding $1,658,317.36 in damages to the plaintiff.

The most significant issue raised by the city is the claim that damages may not be awarded in excess of the amount appropriated for the contract under G. L. c. 44, § 31. We hold that the statute does not apply to this action and that, with the exception of an item of damages relating to the plaintiff's profits, the judgment is to be affirmed.

1. *Applicability of G. L. c. 44, § 31.* Pointing to the fact that the damage award, when added to previous payments to the contractor, was in excess of the sums appropriated

for the entire project, the city argues that the plaintiff's claim is barred. The following language of c. 44, § 31, as appearing in St. 1946, c. 358, § 23, is relied upon: "No department financed by municipal revenue, or in whole or in part by taxation, of any city or town, except Boston, shall *incur a liability* in excess of the appropriation made for the use of such department, each item recommended by the mayor and voted by the council in cities . . . being considered as a separate appropriation . . ." (emphasis supplied).

The question here is whether an award of damages against the city for a breach of contract is a "liability incur[red]" within the meaning of the statute. We have found no Massachusetts authority dealing directly with this question. In two cases alluding to the problem, a Federal court and this court indicated some doubt as to whether appropriation statutes would apply to an award for a breach of contract or to a compromise of an alleged breach. See *County of Middlesex* v. *Gevyn Constr. Corp.*, 450 F.2d 53, 54-55 (1st Cir. 1971), cert. denied, 405 U.S. 955 (1972) (discussing G. L. c. 34, § 14 and c. 35, § 32); *Northgate Constr. Corp.* v. *Fall River*, 12 Mass. App. Ct. 859, 861 (1981) (discussing G. L. c. 44, § 31C).

Other cases construing § 31 (and a similar statute applying to the city of Boston) make clear that its "purpose . . . is to provide central municipal control over irresponsible municipal spending," *Lawrence* v. *Falzarano*, 380 Mass. 18, 24 (1980), and to "limit the powers of public officials in making contracts," *Dyer* v. *Boston*, 272 Mass. 265, 274 (1930). A contractor with a municipality is bound by these limitations and must make his contracts with reference thereto. *Ibid. Lawrence* v. *Falzarano, supra* at 24, and cases cited. The statute applies to additional work under a contract, and it is not enough that the initial contract meets the statutory requirements. *Dyer* v. *Boston, supra* at 274. *Duff* v. *Southbridge*, 325 Mass. 224, 227-229 (1950). See also G. L. c. 44, § 31C (certification that there is an appropriation applies not only to contracts but also to changes in or addition to the work to be performed under a contract).

A contractor may proceed no further than the work "covered by an appropriation." *Arthur R. Murphy, A.I.A., & Associates* v. *Brockton,* 364 Mass. 377, 380 (1973). *Marlborough* v. *Cybulski, Ohnemus & Associates,* 370 Mass. 157, 160 (1976).

There is, however, a distinction between claims under a contract and damages for a wrongful breach of that contract. While the contractor on a public construction contract must follow the procedures spelled out in the contract and cannot by labeling his claims a breach of contract unilaterally accrue expenses, *Glynn* v. *Gloucester,* 9 Mass. App. Ct. 454, 460 (1980), some claims do fall outside the contract, and because of the municipality's conduct constitute a "true breach." *Id.* at 461. *United States* v. *Utah Constr. & Mining Co.,* 384 U.S. 394, 404-405, 412-413 (1966). Where that occurs, we do not think the term "incur a liability" was intended to shield a municipality from liability for its wrongful actions. Cf. *Dealtry* v. *Selectmen of Watertown,* 279 Mass. 22, 28 (1932) (construing G. L. c. 40, § 53).

Once the conditions of G. L. c. 44, § 31, and other statutes relating to municipal contracts have in good faith been met and complied with, we think the "well settled" rule "that a city which is a party to a contract may be held liable to respond in damages," *Lawrence* v. *Falzarano,* 380 Mass. at 28, should apply. General Laws c. 44, § 31, relates to municipal finance and is not, we think, intended to extend the doctrine of municipal immunity so as to leave contractors entirely without remedy for breach of contract in the absence of an appropriation.[1]

---

[1] We note that the Legislature has addressed the question of disruption damages since the date of the contract in this case. Entitled "An Act to expedite payment to general contractors and to subcontractors and to improve the flow of funds in the construction industry," St. 1973, c. 1164, inserted a new section, G. L. c. 30, § 39O, which, in subsection (*a*), provides that public construction contracts shall contain a prescribed clause which requires "an adjustment in the contract price for any increase in the cost of performance" occasioned by a "suspension, delay, or interruption for fifteen days or more" caused by the awarding authority. The passage

The few authorities that we have found elsewhere which address statutory and constitutional appropriation and revenue provisions lend support to our conclusion. See, e.g., *Houston* v. *United Compost Serv. Inc.*, 477 S.W.2d 349, 356 (Tex. Civ. App. 1972) (constitutional requirement that no debt be created without provision for a tax therefor applies to an obligation imposed by contract but not to one imposed by law for breach of a valid contract); *DeKalb County* v. *Georgia Paperstock Co.*, 226 Ga. 369, 371 (1970) (obligation for breach of contract not "debt" within meaning of constitutional provision); *Bates & Rogers Constr. Co.* v. *Board of Commrs.*, 274 F. 659, 663-665 (N.D. Ohio 1920) (statutes requiring preliminary estimates and certification of funds not applicable to actions for breach of contract); *Spitcaufsky* v. *State Highway Commn.*, 349 Mo. 117, 122-127 (1941) (constitutional and statutory requirements for municipal contracts do not protect commission from breach of its own valid contract). But see *Lindekugel & Sons* v. *S.D. St. Highway Commn.*, 87 S.D. 32, 35, 39 (1972), where under a constitutional provision that "[n]o indebtedness shall be incurred . . . and *no warrant shall be drawn* . . . except in pursuance of an appropriation for the *specific* purpose first made" (emphasis supplied), an action for breach of contract was dismissed because there was no appropriation for such a claim.

We hold, accordingly, that the absence of an appropriation does not relieve a municipality from an award for breach of a valid contract. We turn now to the city's other claims.

2. *Challenge to the findings of the master.* The city filed numerous objections to the master's report and moved for recommittal. We agree with the trial judge that the city failed to raise properly the issue whether the master's find-

of the act, and its title evincing an intent to give more speedy relief to contractors may tend to support our view that the Legislature did not, prior to the passage of § 39O, consider contractors to be without remedy for breach of contract in the absence of an appropriation.

ings were supported by the evidence.[2]   After the city had filed its objections and its request for summaries, the master, citing *Miller* v. *Winshall*, 9 Mass. App. Ct. 312, 316 (1980), declined to prepare summaries, asserting that the 751 subsidiary findings and sixty-six general findings in his original 189 page report were themselves so particularized that they, in effect, constituted a summary of the evidence.   In *Miller* v. *Winshall*, at 316, we indicated the procedure to be followed when a master declines to make summaries. "At that juncture it would have been open to the [city] to move that the court order the master to summarize the evidence, but such a motion would have to have been accompanied by an affidavit of the defendant's counsel setting forth a summary of the evidence as the defendant thinks the master ought to have prepared it, relating each portion of summary to the finding it purportedly contradicts." *Ibid*.   This the defendant's counsel failed to do.

In cases involving masters, where the evidence is not to be reported, the filing of exhibits (other than those incorporated by reference in the master's report) or transcripts does not require the judge to examine such material. *Peters* v. *Wallach*, 366 Mass. 622, 626 (1975).   *Glynn* v. *Gloucester*, 9 Mass. App. Ct. at 458-459 n.6.   Despite the master's specific reference to *Miller* v. *Winshall*, the city, as the judge correctly noted, did not lay "a sufficient foundation to make the purported absence of evidentiary support for the findings apparent."

Except as to profits, discussed in 5(b), *infra*, the same flaw applies to the city's arguments that damages were improperly computed and that there was no basis on which to distinguish between disruption damages for which the city was responsible and delay damages caused by numerous factors not attributable to the city.   Having failed to supply summaries of the evidence on these issues, the city has not prop-

---

[2] The hearings took place and judgment entered prior to the recent amendment to Mass.R.Civ.P. 53(h), 386 Mass. 1237 (1982), and our discussion relates to the procedure under the prior rules.

erly provided the Superior Court judge or this court with a means to review its claims.

The city, for like reason, has not properly preserved for judicial review its claims that expert testimony was needed to determine the damages for which the city was responsible and that the plaintiff's witness did not properly compute the damages. See *Poti Holding Co.* v. *Piggott*, 15 Mass. App. Ct. 275, 276 (1983).

On its face, the master's report carefully distinguishes between damages caused by reason of the plaintiff's inability to perform work in the sequence planned (for which the city was responsible) and delay damages caused by multiple other sources for which the judge did not assess the city. See *U.S. Indus., Inc.* v. *Blake Constr. Co.*, 671 F.2d 539, 546 (D.C. Cir. [1982]). The subsidiary findings not being "mutually inconsistent, contradictory, plainly wrong or vitiated in view of the controlling law" are binding. *Wormstead* v. *Town Manager of Saugus*, 366 Mass. 659, 660 (1975). The master's findings which describe the frequent revisions made to the utility plans and the failure promptly to correct the numerous conflicting specifications contained in other plans amply support the judge's conclusion that the city failed in its obligation under its contract with the plaintiff to "see that necessary plans were seasonably furnished to the plaintiff." *Morgan* v. *Burlington*, 316 Mass. 413, 417 (1944).

3. *Effect of change orders.* The city claims that two change orders extending the time for performance "at no change in contract price" preclude an award of damages. The master's findings as to the circumstances of the issuance of the change orders, cf. *Antonellis* v. *Northgate Constr. Corp.*, 362 Mass. 847, 851 (1973), confirmed by the notation on the face of the May 16, 1968, order, make clear that the change orders did not dispose of the plaintiff's disruption damages claim.

4. *Roof problems.* The master originally found that because of leakage problems in the roof of the school due to defective workmanship by a subcontractor of the plaintiff,

the city was entitled to a credit of $458,248. The master's findings, however, were inconsistent. He found that blisters on roofs are a common problem, that there are many causes for roof gas (the source of blisters) to appear which are unrelated to defective workmanship,[3] and that these causes were present here. He also found that one cannot determine the cause of the roof gas through observation of blisters. Nevertheless, he relied upon the opinion of a roofing contractor to conclude that the blistering was due to improper application of the roofing materials by a subcontractor. The judge, ruling that this conclusion was "highly speculative," and "inconsistent" with the master's subsidiary findings, recommitted the matter to the master "to make further subsidiary findings."

On recommittal, the master incorporated his original subsidiary findings and added a single additional subsidiary finding which related to the qualifications of the roofing contractor. He found that the contractor was "an experienced roof installer and supervisor of roof installers, but had no experience, no technical qualification and no training in designing roofs." While not directed by the court to revise his general findings, the master did so and concluded that the condition in the roof was not due to improper performance by subcontractors for whom the plaintiff was responsible. Not unexpectedly, the city objected to the master's report after recommittal. Despite the judge's previous rulings, the city once again failed to follow the prescribed format for challenging subsidiary findings of a master. Moreover, not only is the opinion of the roofing contractor inconsistent with the other findings of the master, but in view of those findings, it must be rejected as speculative.

5. *Percentage awards.* (a). *Additional labor costs.* The master added to the direct costs for labor a percentage to

---

[3] Among such reasons are people walking on the roof, subsequent plumbing work, other repairs, and movement of the underlying roof deck or structure. The master found that all such events occurred after the Medford high school roof had been installed.

cover workman's compensation, insurance, and other additional labor costs. There is no doubt that additional costs were incurred for these items. In view of the city's failure (discussed in part 2) to bring properly before the trial judge the evidentiary support for its claim that the percentage used by the master was improper, this ground of appeal is without merit.

(b). *Overhead and profit.* The master also added to direct costs an amount equal to fifteen percent of labor, equipment and material costs as well as an amount of ten percent of the sums paid to subcontractors to cover "overhead, superintendence and profit" to the contractor. To the extent that such additional percentage covers overhead and superintendence costs, the master's finding is not unjustified on this record where the evidence is not reported. These expenses normally will be incurred where additional work is caused by a breach, and a contract provision for extra work may be a reasonable figure to use for such items. See *PDM Plumbing & Heating, Inc.* v. *Findlen,* 13 Mass. App. Ct. 950 (1982).

The contract provision, however, did not separate overhead and superintendence from profit, and there is no finding of the master that the city's breaches caused the contractor any specific loss of profit. In the absence of such a finding, we think it improper to add a percentage figure to direct costs which includes profit. See generally 5 Corbin, Contracts § 1022 (1964). We recognize that in some jurisdictions and in some circumstances a percentage for overhead and profit has been sustained, e.g., *Westcott* v. *State,* 264 App. Div. 463, 465-466 (N.Y. 1942), but we think that before damages for loss of profits are assessed against the city, some reasonable findings that there was, indeed, a loss of profits should be made. Cf. G. L. c. 30, § 39O (adjustment shall not include profit, see note 1, *supra*). Accordingly, the matter must be remanded for a determination, either by the court or upon recommittal to the master, of the lost profits, if any, which were occasioned by the city's breach. Exact certainty is, of course, not required. See 5 Corbin, Contracts § 1022, at 138-144.

6. *Interest on the award.* The city did not prepare the semi-final estimate required to exercise its rights under G. L. c. 30, § 39K. Interest was, therefore, properly awarded under that section. The city's claim that it could rely on the fact that an architect's certificate was not issued is without merit. The policy of the statute cannot be so thwarted. See *D. Federico Co.* v. *New Bedford Redevelopment Authy.*, 9 Mass. App. Ct. 141, 146 (1980).

Because of the necessity for reconsideration of the portion of damages which included profits of the plaintiff, the judgment is vacated, and the matter is remanded to the Superior Court for further proceedings not inconsistent with this opinion. Since in all other respects the judgment below is affirmed, the judge may, in his discretion, issue a partial judgment covering all items except those discussed in this opinion under part 5(b).

*So ordered.*