# THOMAS O'CONNOR & CO., INC. *vs.* CITY OF MEDFORD.

Suffolk.   May 13, 1985. — September 16, 1985.

Present: DREBEN, KAPLAN, & SMITH, JJ.

*Contract*, Damages. *Damages*, Breach of contract, Interest. *Interest. Practice, Civil*, Interest, Judgment.

Where on appeal from a judgment awarding damages for breach of a construction contract this court had vacated a portion of the judgment with respect to two percentage additions to direct costs covering overhead, superintendence, and profits, and had remanded the case for consideration whether any loss of profits had been occasioned by the defendant's breach, and where on remand the trial judge found that the plaintiff had failed to prove any lost profit, the trial judge erred in permitting the plaintiff to submit additional evidence on items of overhead and superintendence, and increasing the previous award on account of these items, rather than reducing the percentage additions so as to eliminate the share attributable to profits. [762-763]

Where a portion of a judgment awarding contract damages which was affirmed on appeal was clearly separated from a part which was vacated for additional proceedings, where the dollar amount of the portion which was affirmed was ascertainable, and where this court suggested the entry of a partial judgment in the amount which was affirmed, interest on this amount was to be calculated at the rate applicable at the time the original judgment was entered. [763-767]

BILL IN EQUITY filed in the Superior Court on December 29, 1972.

Following the decision of this court reported in 16 Mass. App. Ct. 10 (1983), further proceedings respecting damages were had before *Paul G. Garrity*, J.

*Robert W. Blakeney* (*Robert Blumsack* with him) for city of Medford.

*Steven J. Comen* for the plaintiff.

DREBEN, J.   In *Thomas O'Connor & Co.* v. *Medford*, 16 Mass. App. Ct. 10 (1983), we considered the appeal of the

city from a judgment entered on October 23, 1981, awarding the general contractor $1,658,317.36 in damages for breach of a construction contract. We affirmed the trial court's judgment in all respects except for two percentage additions to direct costs covering overhead, superintendence and profits. We suggested that the trial judge, in his discretion, might enter a partial judgment covering all items except for the two percentage additions. The latter items were discussed in section 5(b) of our previous opinion (the 5[b] items). *Id*. at 18, 19.[1]

The questions on this second appeal by the city are (1) whether the judgment entered on January 10, 1984, after further hearing in the trial court, was consistent with our remand order, and (2) whether the 1984 judgment applied the proper interest rate. We answer no to both questions.

1. *Treatment of 5(b) items after our 1983 remand.* In our decision at page 18, we concluded that to the extent the percentage additions to direct costs covered overhead and superintendence costs, they were not unjustified. We held, however, that an addition attributable to a loss of profits would be improper unless the contractor could show that there were, in fact, lost profits. The matter was remanded "for a determination . . . of the lost profits, if any, which were occasioned by the city's breach." *Ibid*. On remand, the trial judge found that the "plaintiff has failed to prove any lost profit because no evidence was offered in support of any lost profit." Instead of reducing the damages, the judge permitted the contractor to submit additional evidence on the items of overhead and superintendence. He found that the damages for those two items were $437,249, thus exceeding the amount attributable to the 5(b) items in the 1981 judgment. See note 1, *supra*. The final judgment entered on January 10, 1984, reflected this increase.

We intended by our remand that a finding of no lost profits would result in a reduction in the percentage additions so as

---

[1] On remand, the parties did not contest (except as to interest) the amount which should be entered as a partial judgment representing direct costs, namely $1,463,891.53. The difference between that figure and the judgment entered on October 23, 1981, namely $194,425, is, therefore, the figure which must be used as representing the 5(b) items in the 1981 judgment.

to eliminate the share attributable to profits.[2] Our remand was not intended to authorize the taking of evidence to increase the previous award on account of superintendence and overhead. Accordingly, the judgment, insofar as it pertains to the items covered in 5(b) of our previous opinion, is vacated, and the matter is remanded to eliminate the profit element from the percentage additions.[3]

2. *Interest on partial judgment.* In accordance with our suggestion, a partial judgment entered on October 12, 1983, covering all items except the percentage additions. Interest was awarded as follows: "six per cent (6%) per annum from December 29, 1972 to August 14, 1974, and eight per cent (8%) per annum thereafter . . . ." The judgment contained the following explanation: "Damages were assessed in this action before July 1, 1982."[4]

Subsequent to the entry of the partial judgment, the judge increased the damages for the 5(b) items as recounted in part 1 of this opinion. He ordered that "final judgment enter to incorporate the partial judgment . . . previously . . . entered . . . . with interest thereon at the current rates, because . . .

---

[2] The percentage additions representing "overhead, superintendence and profits" contained in the original contract between the contractor and the city were: fifteen percent of labor, equipment and material costs; and ten percent of the sums paid to the subcontractors. The share attributable to profits for each percentage should be eliminated as follows: if, for example, the evidence shows that the fifteen percent figure of the original contract was derived by allocating a six percent figure to overhead, a two percent figure to superintendence and seven percent to profits, the fifteen percent figure should be reduced by seven percent.

[3] On remand, the plaintiff has the burden of proof of showing, by custom in the industry or otherwise, what proportions of the fifteen and ten percent figures were allocated in the original contract to the items of superintendence and overhead, and hence, not to the item of profits.

[4] The interest rates in the October 12, 1983, judgment were the same as had been used in the October 23, 1981, judgment. By St. 1982, c. 183, § 3, the rate of interest in the governing statute, G. L. c. 231, § 6C, was increased to twelve percent. Section 4 of c. 183 made the increase applicable to all actions in which damages are assessed on or after July 1, 1982. See *Patry* v. *Liberty Mobilehomes Sales, Inc.*, 394 Mass. 270, 273 (1985). Prior to the 1982 amendment, the rates of interest here relevant were six percent, see St. 1968, c. 783, and eight percent, see St. 1974, c. 224, § 2.

assessment occurred today [January 5, 1984] as opposed to in the past." A judgment entered on January 10, 1984, with interest at the rate of twelve percent from the date of the commencement of the action on December 29, 1972, to January 5, 1984.[5]

The interest award was erroneous. Had the October 23, 1981, judgment been affirmed in whole, there is no question that the twelve percent rate would not have applied. That rate is applicable only to actions where damages are assessed on or after July 1, 1982. See note 4, *supra*. In *Patry* v. *Liberty Mobilehome Sales, Inc.*, 394 Mass. 270, 273 (1985), the court upheld a computation of interest at eight percent despite the plaintiff's contention that damages were not assessed until 1983, when the trial court's judgment was affirmed. The Supreme Judicial Court rejected the plaintiff's claim, saying: "The damages were assessed by the trial court in 1981. The appellate process did not alter the judgment based on that assessment. Affirmation of a judgment does not involve the assessment of damages." *Ibid*.

On the other hand, had the October 23, 1981, judgment been reversed, and a new trial ordered, the new judgment, if entered after July 1, 1982, would have included interest at the rate of twelve percent from the date of the commencement of the action. See *Tosti* v. *Ayik*, 394 Mass. 482, 484, 499-500 (1985).

Here, the October 23, 1981, judgment was affirmed except for the 5(b) items. A somewhat similar situation occurred in *Kneeland* v. *American Loan & Trust Co.*, 138 U.S. 509, 511

---

[5] In order to stop additional accruing of interest, the city, on February 6, 1984, paid the plaintiff $2,716,534.57 computed as follows:

(a) Principal amount: $1,463.891.53 (see note 1, *supra*).

(b) Six percent interest on principal amount from December 29, 1972, to August 14, 1974: $142,919.88.

(c) Eight percent interest on principal amount from August 14, 1974, to October 12, 1983: $1,072,744.95.

(d) Eight percent interest on principal amount from October 12, 1983, through February 5, 1984: $36,978.21.

Both the city and the plaintiff reserved their respective rights as to the proper amount of interest.

(1891), decided before the adoption of the Federal Rules of Appellate Procedure.[6] On a prior appeal in *Kneeland*, the Supreme Court had "reversed" and "remanded" with "instructions to strike out allowances for rentals prior to December 1, 1883" but to allow subsequent rentals as determined by the lower court to stand. On remand, the lower court interpreted the Supreme Court's mandate as affirming so much of the decrees as provided for the rental allowances subsequent to December 1, 1883. In its new decrees, the lower court awarded postjudg-

---

[6] Federal Rule of Appellate Procedure 37, effective July 1, 1968, specifically calls for a direction as to interest by the appellate court in the event a judgment is modified or reversed. The rule provides:

> "Unless otherwise provided by law, if a judgment for money in a civil case is affirmed, whatever interest is allowed by law shall be payable from the date the judgment was entered in the district court. If a judgment is modified or reversed with a direction that a judgment for money be entered in the district court, the mandate shall contain instructions with respect to allowance of interest."

Thus, the first sentence of the Federal rule provides the same rule as that set forth in *Patry* v. *Liberty Mobilehome Sales, Inc.*, 394 Mass. at 273, and in *Peak* v. *Massachusetts Bay Transp. Authy.*, ante 726, 729 (1985). There is, however, no Massachusetts analogue for the second sentence.

A number of Federal cases order postjudgment interest to be computed from the date of entry of the initial judgment where a lower court's award is permitted in large part to stand. See, e.g., *Perkins* v. *Standard Oil Co.*, 487 F.2d 672, 676 (9th Cir. 1973) (one item reduced); *United States* v. *Michael Schiavone & Sons*, 450 F.2d 875, 876-877 (1st Cir. 1971) (where appellate court reduces the amount of the judgment, postjudgment interest attaches on the reduced amount from the date of the original judgment). See also *Brooks* v. *United States*, 757 F.2d 734, 740-741 (5th Cir. 1985); *Institutionalized Juveniles* v. *Secretary of Pub. Welfare*, 758 F.2d 897, 927 (3d Cir. 1985); *Turner* v. *Japan Lines*, 702 F.2d 752, 754 (9th Cir. 1983). See generally Note, Interest on Judgments in the Federal Courts, 64 Yale L.J. 1019 (1955); Annot., 4 A.L.R.3d 1221 (1965).

In the absence of a directive as to interest from an appellate court such as is required by Fed.R.App.P. 37, quoted above, it is often difficult to determine from an appellate opinion whether portions of a judgment are affirmed for purposes of computing interest. For this reason, we do not view as persuasive in Massachusetts, the Federal cases (including some of those cited above) which allow postjudgment interest on an original judgment without requiring both that the dollar amount of the portion affirmed be ascertained, or be readily ascertainable, and that the portion of the judgment affirmed be clearly separated from the remaining portions of the judgment.

ment interest on those subsequent allowances from the date of its former decrees. The Supreme Court affirmed, stating at 511-512,

> "While the former decrees were in terms reversed, and the cases remanded for the entering of new decrees, yet, the terms of those new decrees were specifically stated, and in so far as the separate and distinct matters embraced in the former decrees were ordered to be incorporated into the new, it is so to be regarded as *pro tanto* an affirmance. . . . The rights of parties are not to be sacrificed to the mere letter, and whether the language used was reversed, modified, or affirmed in part and reversed in part, is immaterial. Equity looks beyond these words of description to see what was in fact ordered to be done."

The analogy of *Kneeland* is helpful even though in the present case additional evidence had to be taken as to the portion of the judgment which was not affirmed (the 5[b] items). Where, as here, 1) the portion of the judgment which was affirmed was clearly separated from the part which was vacated for additional proceedings; 2) the amount of the portion which was affirmed was ascertained or ascertainable in dollar amount; and 3) where the appellate court itself suggested the entry of a partial judgment in the amount which was affirmed, the principles of *Patry* v. *Liberty Mobilehome Sales, Inc.*, 394 Mass. at 273, should be applied to the portion of the judgment which was affirmed. Those damages should, therefore, be considered "assessed" at the time of the original judgment. See also *Frank D. Wayne Associates* v. *Lussier*, 394 Mass. 619, 621-622 & n.2 (1985).

With the October 23, 1981, date as the date of assessment, the plaintiff is now entitled to a partial judgment as follows:

> (1) The principal amount, as set forth in subparagraph (a) of note 5, *supra*.
> (2) Interest at six percent of the principal amount from December 29, 1972, to August 14, 1974, as set forth in

subparagraph (b) of note 5, *supra*. (Rate determined by St. 1968, c. 763.)

(3) Interest at eight percent on the principal amount from August 14, 1974, to October 23, 1981, the date of entry of the initial judgment in the trial court. (Rate determined by St. 1974, c. 224, § 2, effective August 14, 1974.)[7]

(4) Postjudgment interest on the sum of the amounts listed in subparagraphs 1-3 above from October 23, 1981, to the date of payment, February 6, 1984. The postjudgment interest should be computed at the rate of six percent for the reasons explained in *Peak* v. *Massachusetts Bay Transp. Authy., ante* 726, 728-729 (1985).

3. *Further proceedings*. The judgment entered on January 10, 1984, is vacated, and a partial judgment is to enter in accordance with the four numbered items of the last paragraph of part 2 of this opinion. Since the judge who originally heard this case is no longer on the bench, another judge is to take evidence on the 5(b) items and is to reduce the percentage additions consistent with the discussion contained in part 1 of this opinion.

*So ordered.*

---

[7] The parties have not raised, and we do not consider, any question as to the rate or amount of interest to be paid during the period between a master's report and the entry of judgment after confirmation of that report. See *Peak, ante* at 727 n.3.