Kaplan, Mitchell H., J.
The plaintiff, Massachusetts Education and Government Association Property & Casualty Self-Insurance Group, Inc. (“MEGA”), brought this action against the defendant, Town of Saugus (“Saugus”), asserting claims for breach of contract and quantum meruit arising from unpaid worker’s compensation insurance premiums. Before the court is MEGA’s motion for summary judgment. For the following reasons, MEGA’s motion is DENIED, in part, and ALLOWED, in part.
FACTS
The following relevant facts are undisputed or viewed in the light most favorable to Saugus, the non-moving party.
Saugus purchased worker’s compensation insurance coverage from MEGA under Policy No. WC20-03211 (the “Policy”) for policy years running from July 1, 2003, through June 30, 2004; July 1, 2004, through June 30, 2005; July 1, 2005, through June 30, 2006; and July 1, 2006, through June 30, 2007 (this last year shall be referred to as the “2006 policy year”). Prior to each policy year, MEGA quoted an estimated premium to Saugus. The quote was based on an estimate of the number of Saugus employees in different rate classifications to be covered by the Policy multiplied by the applicable rates. At the conclusion of each policy year, MEGA obtained from Saugus a payroll audit to determine the actual number of employees in each class so that the actual premium for the policy year could be calculated. Based upon the annual payroll audit, MEGA would either issue a credit to Saugus if the actual premium was less than the estimated amount previously paid by Saugus or an invoice if the actual premium was greater than the estimated amount.
On or about May 1,2006, MEGA quoted a premium of $107,260 to Saugus for the 2006 policy year. This quote was based upon the payroll audit for the 2004 policy year (the year ending June 30, 2005), because that was the last audited year available. Prior to issuing the quote, MEGA sent Saugus a letter dated January 23, 2006, that stated in relevant part;
We will be using audited payroll figures for the year ended (sic) June 30, 2005. The enclosed worksheet details that information. If you want to update the payroll to minimize audit impact or you are aware of changes (increases or decreases) in your payroll you can note the preferred payroll figure in each class code and return the document to us.
According to MEGA, Saugus did not submit any new or additional information. (This point is discussed further, below.) The 2004 policy year payroll audit did not list an amount under the classification “school-professional.”
On June 19, 2006, Saugus appropriated $147,398.24 for worker’s compensation insurance for the 2006 policy year. After the close of the 2006 policy year, the annual payroll audit was completed. Based upon the results of that audit, the actual premium for that year was calculated to be $235,287. Saugus’s school department employees, who were not included in the estimate, but were included in the audit, accounted for $115,869 of the $128,027 increase from the premium quoted prior to the 2006 policy year.[1] Saugus had submitted worker’s compensation claims to MEGA for school department employees for the 2006 policy year; and, by the end of December 2010, over $78,000 had already been paid by MEGA on these claims.
On or about November 5, 2007, MEGA sent Saugus an invoice for $128,027. To date, no payment has been made.
DISCUSSION
A. Summary Judgment Standard
Summary judgment is granted when there are no genuine issues of material fact and the moving parly is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983). To prevail on its summary judgment motion, the moving party must affirmatively demonstrate the absence of a triable issue, and that the summary judgment record entitles it to a judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). “That some facts are in dispute will not necessarily defeat a motion for summary judgment. The point is that the disputed issue of fact must be material.” Carey v. New England Organ Bank, 446 Mass. 270, 278 (2006), quoting Beatty v. NP Corp., 31 Mass.App.Ct. 606, 607-08 (1991). “As to materiality, the substantive law will identify which facts are material.” Id. quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
B. Breach of Contract
“To establish a breach of contract under Massachusetts law, the plaintiff must demonstrate that: (1) a valid, binding agreement exists; (2) the defendant breached the terms of the agreement; and (3) the *523 plaintiff suffered damages from the breach.” Brooks v. AIG Sun America Life Assur. Co., 480 F.3d 579, 586 (1st Cir. 2007), citing Michelson v. Digital Fin. Servs., 167 F.3d 715, 720 (1st Cir. 1999).
MEGA asserts that Saugus breached the contract for worker’s compensation insurance coverage for the 2006 policy year by failing to supply reasonably accurate payroll figures on which MEGA could calculate an estimated premium and then failing to pay the full amount due for the coverage provided after final audit. MEGA claims damages in the amount of $146,883.32, which represents the outstanding balance of $ 128,027 plus 12% interest from November 5, 2007. Saugus contends that any further payment of premium to MEGA would violate G.L.c. 44, §31, because the amount claimed exceeds the amount appropriated, and alleges that other than refusing to pay the final invoice, it committed no breach of contract.
General Laws c. 44, §31 provides, in pertinent part, that
[n]o department financed by municipal revenue, or in whole or in part by taxation, of any city or town, except Boston, shall incur a liability in excess of the appropriation made for the use of such department . . . [with an exception for certain emergency situations which is not material to the present case).
“The purpose of this statute is to provide central control over municipal spending and to limit the power of public officials to make contracts.” KVS Info. Sys., Inc. v. Tisbury, 753 F.Sup. 1020, 1023 (D.Mass. 1990), citing Lawrence v. Falzarano, 380 Mass. 18, 24 (1980) (Section 31 sets “rigid barriers against expenditures in excess of appropriations”). However, the statute has not been held to “shield a municipality from liability for its wrongful actions.” Thomas O’Connor & Co. v. Medford, 16 Mass.App.Ct. 10, 13 (1983).
“[A] contractor that does work pursuant to a contract that is covered by an appropriation and suffers damages, not contemplated or covered by the appropriation, due to the municipality’s breach of the contract ... is not barred from recovery.” Reynolds Bros. v. Norwood, 414 Mass. 295, 298 (1993). “There is, ... a distinction between claims under a contract and damages for a wrongful breach of that contract. While a contractor... cannot by labeling his claims a breach of contract unilaterally accrue expenses, some claims do fall outside the contract, and because of the municipality’s conduct constitute a ‘true breach.’ ” Thomas O'Connor, 16 Mass.App.Ct. at 13 (internal citations omitted). In Reynolds Bros., the Supreme Judicial Court held that G.L.c. 44, §31 did not relieve the defendant town from liability for interest under G.L.c. 30, §39G for late payments on a construction contract. 414 Mass. at 300. Similarly, in Thomas O’Connor, the Appeals Court concluded that G.L.c. 44, §31 did not relieve the defendant town from liability for the plaintiff contractor’s losses due to deficiencies' in plans and other town actions which disrupted its construction schedule. 16 Mass.App.Ct. at 14.
Based on the summary judgment record, there are genuine issues of material fact as to whether Saugus breached its contract with MEGA by failing to provide MEGA with reasonably accurate payroll figures on which it could estimate the premium for the 2006 policy year. MEGA alleges that because Saugus failed to supply reliable payroll figures, it based its estimated premium for the 2006 policy year on a 2004 policy year audit which did not include the school department. Saugus asserts that it provided MEGA an Employee Concentration form that included school department employees and argues that the 2004 policy year audit clearly included school department personnel. This factual dispute gives rise to at least two disputed questions of material fact. The first and most obvious is: “What employee information did MEGA have at the time it provided its premium quote for the 2006 policy year?” The second is: If MEGA only had available audited policy information that omitted school department personnel, was Saugus’s failure to provide updated and reasonable personnel information a breach of the contract between MEGA and Saugus, which contract, of course, included a covenant of good faith and fair dealing. See Anthony’s Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 471-72 (1991). As these disputes are central to whether a breach occurred, MEGA’s motion for summary judgment is DENIED, as to its claim for the full amount of unpaid premium due under the Policy.[2]
However, as noted above, Saugus appropriated $147,398.24 for workers’ compensation insurance for the year ending June 30 2007, but only paid MEGA $107,260. Additionally, Saugus does not dispute that the full amount of premium due, after audit, under the Policy is $235,287, as MEGA claims. In its opposition, Saugus contends that G.L.c. 44, §31 operates to invalidate MEGA’s contract with Saugus. This is a misstatement of the law. Rather, “to the extent that the contract between [Saugus and MEGA] purports to subject [Saugus] to liability in excess of the amount appropriated for its payment, the contract ... is not binding on [Saugus].” Marlborough v. Cybulski, Ohnemus & Assocs., Inc., 370 Mass. 157, 161 (1976). MEGA is therefore entitled to recover at least that portion of the outstanding balance that was appropriated “less such sums as have been validly paid ...” Duff v. Southbridge, 325 Mass. 224, 229-30 (1950).
C. Quantum Meruit
Alternatively, MEGA argues that it is entitled to recovery under a theory of quantum meruit because Saugus received the benefit of the insurance coverage. In response, Saugus contends that no recovery against a municipality is permitted under quantum memit where a contract is invalid because of a failure to comply with statutory requirements. See Adalian Bros., Inc. v. Boston, 323 Mass. 629, 632 (1949). While *524 the court questions the precise words used by Saugus to describe this legal principle, it agrees with the substance. As clearly stated in Adallan, a plaintiff cannot avoid the limitations imposed by G.L.c. 44, §31 by performing the service or providing the goods for which there had been no or an insufficient appropriation, and then asserting a right to recover under quantum meruit or some other quasi-contractual, equitable theory. MEGA’s motion for summary judgment on its quantum meruit claim is therefore DENIED.[3]
ORDER
For the foregoing reasons, it is hereby ordered that MEGA’s motion for summary judgment on Count I of the Complaint asserting a claim for breach of contract is ALLOWED with respect to the difference between the amount received from Saugus and the amount appropriated ($147,398.24—107,260 = $40,138.24), but DENIED as to any additional amount and DENIED as to Count II.
Comparison of Estimated & Audited Payroll for Period 7/1 /06-7/1/07
(Joint Appendix of Exhibits, Exhibits E and F)
ESTIMATED AUDITED
PAYROLL DIFFERENCE Cl ASS CLASSIFICATION PAYRQU,
106 Tree Removal $120,914 $89,658 (31,256)
5509 Street/ $886,102 $731,073 (155,029)
Road Maintenance
7382 Bus: All Other $36,361 $32,002 (4,359)
7520 Water $169,241 $240,521 71,280
Operation & Drivers
7580 Sewage $179,259 $213,602 34,343
Operation & Drivers
7720 Police $ - $50,096 50,096
Officers & Drivers
8742 Salespersons $10,200 (10,200)
8810 Clerical Office $2,449,724 $3,086,445 636,721
8820 Attorney $48,494 $51,452 2,958
8832 Physical & Clerical $133,928 $141,598 7,670
8868 School-Professional $- $18,104,604 18,104,604
9015 Building $262,487 $77,683 (184,804
Operation by Owner
9101 School: All Other $9,494 $1,455,834 1,446,340
9102 Park Noc: All Empl $508,283 $552,151 43,868
9220 Cemetery $136,819 $203,528 66,709
Operation & Drivers
9403 Garbage $37,700 $77,121 39,421
Collection/Drivers
9410 Municipal $338,907 $292,648 (46,259)

See attached table comparison of the estimated payroll to the audited payroll for additional discrepancies.

The court is not persuaded by MEGA’s alternative argument that the contract falls under the “constantly recurring duties” exception to G.L.c. 44, §31. While it is true that multiple-year municipal contracts have been upheld despite the lack of an appropriation for a subsequent year, these contracts involved municipal functions which “required action day m and day out, permanently.” Arthur R. Murphy, AIA, & Assoc. v. Brockton, 364 Mass. 377, 380 (1973); see Clarke v. Fall River, 219 Mass. 580, 586 (1914) (garbage collection); Salisbury Water Supply Co. v. Salisbury, 341 Mass. 42, 47 (1960) (water supply). Workers’ compensation insurance coverage is not a function of this type, but is more aptly described as an occasional function. See Arthur R. Murphy, ALA, & Assoc., 364 Mass. at 380.

The court does not address whether the town accountant had authority to bind Saugus to a payment plan as it is not germane to any material issue in dispute.