355 Mass. 304 (1969)
244 N.E.2d 300
RICH AND SON CONSTRUCTION CO., INC.
vs.
TOWN OF SAUGUS.
Supreme Judicial Court of Massachusetts, Essex.
January 6, 1969.
February 4, 1969.
Present: WILKINS, C.J., SPALDING, WHITTEMORE, SPIEGEL, & REARDON, JJ.
*305 John A. Fiorentino for the plaintiff.
George O. Gregson for the defendant.
WHITTEMORE, J.
The plaintiff in an action of contract in the Superior Court sought recovery for its services in adjusting a fire loss. A verdict was directed for the defendant and the plaintiff's exceptions present primarily the issue whether the contract was valid, notwithstanding the absence of an appropriation, because it was made in a case "of extreme emergency involving the health or safety of persons or property" declared by vote of "a majority vote of all the selectmen" (G.L.c. 44, § 31, as amended by St. 1955, c. 259).[1]
We state the facts as the jury could have found them. On October 1, 1963, the junior high school in Saugus was destroyed by fire. On October 23, 1963, fire destroyed the east wing of the senior high school. After each fire the selectmen unanimously voted to declare an emergency. The second vote recited that the purpose was so "that the Town Manager could act to alleviate this situation." The first vote had a similar recital. There was testimony that the town manager wanted emergency powers to make temporary repairs and "to rebuild the east wing."
The town manager was the officer responsible for maintenance and repair of buildings, the preparation of plans and the supervision of work on existing buildings and on the construction of new buildings. He had the power to award all contracts. After the second fire he asked the treasurer of the plaintiff corporation to adjust the fire loss. The plaintiff, by its treasurer, agreed to do so for an adjuster's fee of ten per cent if the selectmen approved. They did approve. There was talk between the plaintiff's treasurer, the town manager and the insurance company's adjuster as *306 to whether the insurance company could pay the loss directly to the plaintiff to permit it to start immediate rebuilding. "In the meantime, it was generally agreed, that the plaintiff corporation should commence adjusting the fire loss immediately."
The plaintiff took the necessary action for adjustment between October 23, 1963, and December 9, 1963, and negotiated "with several contractors, subcontractors, material men and engineers regarding the damage to the east wing ... and the cost of repairing and replacing" it.
An appropriation to support the contract was lacking. A town meeting could have been called on seven days notice.
The loss of classroom and other space led to the scheduling of senior high school classes for morning sessions and of junior high school classes in the same spaces for the afternoon, the use of special purpose space as classrooms, the curtailment of curriculum and eventually the conversion of an elementary school to accommodate junior high school students. Bus schedules were rearranged, and special fire drills were held with the cooperation of the fire department.
The evidence fails to show that there was an "extreme emergency involving the health or safety of persons or property" in respect of adjusting the insurance claims. The votes of the selectmen were without significance as evidence to establish that such an emergency in fact existed. Continental Constr. Co. v. Lawrence, 297 Mass. 513, 515-516.
The plaintiff refers to the evidence tending to show that damaged steel beams were in a precarious position and, if they fell, they would pull down other parts of the structure, so that for safety they "should be repaired prior to any snow load and snow was imminent." But no significant relation is shown between emergency action to prevent damage from falling beams, and the adjusting of the fire loss.
The plaintiff contends that apart from borrowing which involved expense and some delay the only source of money for rebuilding the east wing was the insurance proceeds. An affidavit attached to the plaintiff's motion for a new trial asserted facts tending to show this. But this falls short of a *307 showing that, as the plaintiff suggests, an immediate contract to adjust the fire loss was "necessary to obtain the finances to do the repairing or reconstruction."
The evidence does not suggest that reconstruction was materially expedited by acts of the plaintiff in starting its adjustment task immediately rather than a week or two later. But even if such conclusion had been warranted, the contract would not have been action permitted as a step to meet the "extreme emergency."
The statute contemplates the immediate or prompt action that must be taken to avoid risk to persons or property which cannot await action in due course by or in behalf of the town. The selectmen by declaring that the vote was adopted to permit acts "to alleviate this situation" could not broaden the scope of action permitted under the emergency power. "The manifest purpose... of the act was to set rigid barriers against expenditures in excess of appropriations." Flood v. Hodges, 231 Mass. 252, 256. The exception in § 31 is "a carefully limited exception." Continental Constr. Co. v. Lawrence, 297 Mass. 513, 515. Reasonably construed, it does not include what was done here.
There is nothing in the contention that the restriction of § 31 is inapplicable to contracts which will generate funds from which the contractor can be paid. This contractor could be paid only from an appropriation for this purpose.
We do not reach the issue whether the plaintiff was barred by the absence of a license as an adjuster. See G.L.c. 175, §§ 162 and 172.
No error is shown in the denial of the motion for a new trial.
Exceptions overruled.
NOTES
[1] The section provides in part: "No department financed by municipal revenue, or in whole or in part by taxation, of any city or town, except Boston, shall incur a liability in excess of the appropriation made for the use of such department, each item recommended by the mayor and voted by the council in cities, and each item voted by the town meeting in towns, being considered as a separate appropriation, except in cases of extreme emergency involving the health or safety of persons or property, and then only ... by a majority vote of all the selectmen."