ARTHUR R. MURPHY, AIA, & ASSOCIATES, INC. vs.
CITY OF BROCKTON.

Plymouth.    October 4, 1973. — December 12, 1973.

Present: TAURO, C. J., BRAUCHER, HENNESSEY, KAPLAN,
& WILKINS, JJ.

*Municipal Corporations,* Contracts, Municipal Finance. *Contract,* Valid-
ity, With municipality, With architect.

There was no merit in a contention by a firm, which had contracted with a
    city to perform architectural services in connection with a school con-
    struction project, that the contract was for "constantly recurring
    [architectural] duties" and that therefore G. L. c. 44, § 31, did not bar
    the firm from recovering payment from the city for services performed
    in good faith beyond those which could be paid for by the only appro-
    priation made by the city for the project. [379-380]
The provisions of G. L. c. 44, § 32, respecting city budget classifications
    and designations did not justify payment by a city for architectural ser-
    vices in connection with additions to school buildings from an appro-
    priation made for "Schools Renovating." [380-381]

BILL IN EQUITY filed in the Superior Court on May 14,
1971.

The suit was heard by *Collins,* J.

*Philip M. Cronin* for the plaintiff.

*Daniel J. O'Connor,* Assistant City Solicitor, for the city
of Brockton.

HENNESSEY, J. This is an appeal from a final decree entered
after a hearing in the Superior Court on a petition for declar-
atory relief. Suit was commenced in the Probate Court for
Plymouth County and was removed by the defendant to the
Superior Court. The plaintiff, an architectural firm, seeks a
declaration of its right to payment under a contract with the
defendant city. It was held by the judge that payment would
violate G. L. c. 44, § 31, which prohibits any municipal
department from incurring liabilities in excess of its appro-

priations, and that the contract was therefore not binding on the city.[1] We affirm.

The judge found the facts to be as follows. On February 4, 1970, the School Committee of Brockton requested the mayor and city council to provide money for additions to two schools. The mayor's request of February 20 for an appropriation of $40,000 for preliminary studies was answered by an appropriation in that amount by the council three days later. On March 17 the parties signed a contract for architectural services which was executed in the defendant's behalf by the mayor and the head of the Department of Public Buildings (Department). The contract provided for preliminary and final planning and the supervision of bidding and construction work. It included a schedule of the payments to be made at each stage of completion.[2] By this time the city council had also appropriated $100,000 to the "Schools Renovating" account of the Department; none of this appropriation had been encumbered on March 17, 1970.

The plaintiff's invoice of July 10, 1970, for preliminary work was paid by the city out of the $40,000 appropriation. The mayor's request to the city council for authority to borrow $3,500,000 for the purpose of constructing the two school additions and "for site work and architectural fees on

---

[1]The relevant parts of G. L. c. 44, § 31, as amended by St. 1955, c. 259, are as follows:

"No department financed by municipal revenue, or in whole or in part by taxation, of any city or town, except Boston, shall incur a liability in excess of the appropriation made for the use of such department, each item recommended by the mayor and voted by the council in cities, and each item voted by the town meeting in towns, being considered as a separate appropriation, except in cases of extreme emergency involving the health or safety of persons or property, and then only by a vote in a city of two thirds of the members of the city council . . .."

[2]Under the contract, the plaintiff's services were in five phases: (1) schematic design, illustrating the scale and relationship of the project; (2) design development which entailed preparation of drawings to fix the size and character of the entire project; (3) construction documents which would be the working drawings; (4) bidding; and (5) administration of the construction contract. The plaintiff's total fee would not exceed 6.2 percent of the actual construction cost or of $3,000,000 whichever would be the lesser. The contract provided for payment of the fee on the basis of a percentage of the base fee at each of the five phases of the work as follows:

| | |
|---|---|
| Schematic Design Phase | 15% |
| Design Development Phase | 35% |
| Construction Documents Phase | 75% |
| Bidding or Negotiation Phase | 80% |
| Construction Phase | 100% |

same" was denied by a vote taken December 28, 1970.

During this time the plaintiff continued in good faith to work under the contract. On December 30, 1970, the plaintiff submitted an invoice for 71% of the basic total fee for work completed to that date. On February 17, 1971, having completed the final pre-bid stage of the work, the plaintiff updated the invoice to request the balance of $101,317 alleged to be due to it. The present suit was brought to secure payment of this sum.

1. The plaintiff advances two reasons why payment under the contract should not be barred by c. 44, § 31. The first contention is that the appropriation of $40,000 to cover part of the defendant's obligation under the contract is sufficient to meet the statutory requirement and bind the city. It is true that this court has upheld the validity of multiple-year municipal contracts and allowed payment despite the lack of an appropriation for a subsequent year, where the contract in question was to fulfill "constantly recurring duties." *Clarke* v. *Fall River,* 219 Mass. 580, 586 (1914) (garbage collection). See also *Marble* v. *Clinton,* 298 Mass. 87 (1937) (garbage collection, as to which see G. L. c. 40, §4); *Salisbury Water Supply Co.* v. *Salisbury,* 341 Mass. 42 (1960)[3] (water supply).

These cases are of no help to the plaintiff. While the plaintiff's duties under the contract might continue for more than one year, or even in a sense be said to recur as the time arrived for performance of each phase of the contract, this is not a case of constantly recurring duties within the legal meaning that we have given to that term. Assuming that a latent duty existed to perform this function when the need arose, it could hardly be called a constantly recurring one. The municipal functions covered by contracts in the cases cited by the plaintiff are continuous, requiring for their fulfilment action by the city or contractor day in and day out, permanently. The building of schools is not a function of this type. It is more aptly described as an occasional func-

---

[3]This case is also distinguished by the presence of a special statute by which the Legislature authorized the contract in question.

tion, though in a rapidly growing city it might appear to be continual.

It is our conclusion that the plaintiff was obliged to proceed no further with its work under the contract than was covered by an appropriation. Any delay resulting from this limitation would be an inconvenience necessary to enforce the vital policy of c. 44, § 31, "to set rigid barriers against expenditures in excess of appropriations." *McCarthy* v. *Malden,* 303 Mass. 563, 565 (1939). *Duff* v. *Southbridge,* 325 Mass. 224, 228 (1950). Cf. *Dyer* v. *Boston,* 272 Mass. 265, 274 (1930), where it is said that the purpose of such provisions is "to narrow and limit the powers of public officials in making contracts." Section 31 is designed to have the salutary effect of preventing the unlawful expenditure of public funds for public contracts and we would be loath to expand any exception to its operation.

2. The plaintiff's second contention is that payment for the work performed could be made out of the $100,000 appropriation to the "Schools Renovating" account which was passed prior to the signing of the contract and no portion of which had been expended as of that date. The plaintiff argues that G. L. c. 44, § 32, eliminated the need for an itemized budget for a municipal department and that therefore the test should not be the availability of specific items within the departmental budget but the status of unexpended funds in the overall departmental account.[4] However, renovating a building and constructing an addition to it are two distinct activities. The plaintiff's argument that c. 44, § 32, requires budget itemization only to the extent of separating

---

[4]The pertinent portion of G. L. c. 44, § 32, as amended through St. 1969, c. 849, § 59, reads as follows: "The annual budget shall be classified and designated so as to show separately with respect to each officer, department or undertaking for which an appropriation is recommended:- (1) Ordinary maintenance, which shall also include debt and interest charges matured and maturing during the next fiscal year, and shall be subdivided as follows:- (a) Salaries and wages of officers, officials and employees other than laborers or persons performing the duties of laborers; and (b) Ordinary maintenance not included under (a); and (2) Proposed expenditures for other than ordinary maintenance, including additional equipment the estimated cost of which exceeds one thousand dollars. The foregoing shall not prevent any city, upon recommendation of the mayor and with the approval of the council, from adopting additional classifications and designations."

ordinary maintenance and other expenditure avails it nothing. That city councils have been empowered by the Legislature to grant department heads broad freedom to control their appropriated funds does not mean that city councils must do so, or that the courts will interpret them to have done so in the face of explicit and more detailed itemization. Had the $100,000 been appropriated to the Department and categorized in general terms which would demonstrate the city council's willingness to have the Department pay that money to the plaintiff, we might well be inclined to order the enforcement of the contract, in view of the plaintiff's good faith performance. Cf. *Fitchburg Teachers Assn.* v. *School Comm. of Fitchburg,* 360 Mass. 105 (1971). But the city council did not do so. It appropriated that money for what was clearly another purpose and specifically rejected authorization to the mayor to borrow the money to carry out the project and pay the plaintiff.[5]

The plaintiff was bound to take notice of c. 44, § 31. *Duff* v. *Southbridge,* 325 Mass. 224 (1950). Instead it chose to perform under the contract in anticipation of a later appropriation. That it did so in good faith is irrelevant. The rejection of the plan by the city council forecloses any possibility of relief in the present proceeding, as there was no alternative appropriated fund from which payment could be made.

*Decree affirmed.*

---

[5]Because of our conclusions we need not consider the defendant's argument that there was no evidence to show that there were unexpended, appropriated funds in the total departmental budget at any time relevant to this case.