Doerfer, J.
*121 INTRODUCTION
This action arises out of a 1967 eminent domain taking by the defendant Town of Acushnet (Town) of 45,472 square feet of land located at 590 Middle Road inAcushnet, and an alleged 1972 promise by the Town to rebuild a stone wall that was located on the portion of land taken. Doris Govoni (Govoni), the present owner of 590 Middle Road, brought this action against the Town for failure to restore the stone wall, asserting claims in contract, eminent domain and fraud. This matter is before the court on a motion by the defendant for summary judgment- on all counts pursuant to Mass.R.Civ.P. 56. For the reasons discussed below, the defendant’s motion for summary judgment on all counts of the complaint is ALLOWED.
BACKGROUND
The undisputed material facts as established by the summary judgment record are as follows[1]. On August 14, 1967, the Town through its eminent domain powers took a portion of the property located at 590 Middle Road in Acushnet, as part of a series of takings by the Town in order to widen Middle Road. The project to widen the road, install new curbing and construct a new concrete sidewalk necessarily entailed the excavation of pavement, shrubs, trees and grass, and the removal of stone walls and other structures located on land immediately abutting Middle Road.
The Town in 1966 voted on and authorized the taking of a portion of the property at 590 Middle Road, which it effected through an Order of Taking (Order) dated August 14, 1967 and recorded in the Bristol Registry of Deeds on August 15, 1967. The Order states that “(n]o trees on the land taken and not [sic] structures affixed thereto are included in this taking, and the owner of the property is allowed 21 days from the date of this order in which to remove and take away from the land any trees or structures therein.” At the time of the taking, the property was owned by Beatrice Bergeron (Bergeron), Govoni’s mother, and the Order reflects that the sum of $28.43 was awarded to Berge-ron as compensation for the taking.
Five years after the taking of the property by eminent domain, in March 1972, the Town’s Finance Committee placed $3,000 on a Town warrant, and the Town at a town meeting voted and approved the appropriation of a payment of $3,000 for “land damages” to Bergeron. The Town thus issued and Bergeron received a check dated March 27, 1972 for the sum of $3,000. Several months later, on June 28, 1972, the Town’s Executive Secretary to the Board of Selectmen, Alfred Portway (Portway), wrote a letter to Attorney Paul Mathieu, who was representing Bergeron, stating that “the Board of Selectmen have unanimously voted that when the stone wall on property of Beatrice Bergeron, 590 Middle Rd., Acushnet, is disturbed due to road construction in the future, that the town will restore this wall on her property, at no expense to Mrs. Bergeron.” The Town, however, has no record of the above-mentioned vote to restore the wall.
In 1980, Bergeron sold the property to her daughter, Govoni, and her son-in-law, Edward Govoni, but Govoni became the sole owner on April 11, 1985, when she recorded a Declaration of Homestead. Finally, in 1990, the project to widen Middle Road commenced. On March 7, 1990, Govoni, like other residents affected by the project, signed a Right of Entry allowing the contractor to enter her property to undertake specific work on the project, including the removal of the stone wall located along the front portion of the property. The contractor removed the stone wall on or about July 1991, and the project to widen Middle Road was completed on April 2, 1993.
Govoni filed suit against the Town on July 24, 1994, asserting breach of contract based on the 1972 letter from Portway, claims in eminent domain and fraud by the Town in inducing her to sign the 1990 Right of Entry. The Town now moves for summary judgment on all counts of Govoni’s complaint.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P 56(c). The moving parly bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A court will grant summary judgment to the party entitled to judgment as a matter of law if a case only involves a question of law. Cassesso v. Commissioner of Correction, supra.
1. Breach of Contract Claim
Count I of the complaint alleges that the 1972 letter from Portway imposed a contractual obligation on the Town to hire an independent contractor to restore the stone wall at the Town’s expense, and that the Town’s failure to do so entitles Govoni, as assignee of the letter, to damages for breach of contract. The Town moves for summary judgment on the grounds that even assuming arguendo that the 1972 letter constitutes a valid contract, it is unenforceable as a matter of law because the Town failed to approve an appropriation for the restoration of the stone wall prior to entering into the contract.
Section 6 of the Acushnet Town Charter states that the board of selectmen shall have the power to establish town policies and enact them “provided, however, that whenever an appropriation shall be necessary to implement such action, the vote of the board shall be effective only if such appropriation has been made by the town meeting.” A contract by a town made in violation of the town’s bylaws or charter is invalid and cannot be enforced against the town. Clover Hill Hospital, Inc. v. *122 Lawrence, 315 Mass. 284, 286 (1943) (holding that where city charter prohibited city from making contract which personally benefits a city officer or employee, such a contract was unenforceable); Duff v. Southbridge, 324 Mass. 224, 230 (1950) (holding that where a town by-law required contracts expending $500 or more to be based on a written bid and plaintiff did not submit a written bid, the town’s contract with plaintiff was invalid). Gov-oni has failed to present any evidence that the Town made a specific appropriation of money for the restoration of the stone wall on or before June 28, 1972, the date of the alleged contract. Thus, because the Town made the contract in violation of its charter, the contract is unenforceable as a matter of law.
Further, General Laws Chapter 44 Section 31 provides in pertinent part that “No department financed by municipal revenue, or in whole or in part by taxation, of any city or town, except Boston, shall incur a liability in excess of the appropriation made for the use of such department. . . each item voted by the town meeting in towns being considered as a separate appropriation, except in cases of major disaster, including but not limited to flood, drought, fire, hurricane, earthquake or other catastrophe.” G.L.c. 44, §31 (1994). The key purposes of c. 44 §31 are to centralize control over municipal spending, to set rigid barriers against expenditures in excess of appropriations and to limit the powers of public officials in making contracts. O’Connor & Co. v. Medford, 16 Mass.App.Ct. 10, 12 (1983). The statute is intended to protect the citizens and taxpayers of a city or town from ill-considered or oppressive expenditures of public funds, and to inure to the benefit of all by preventing municipal indebtedness. 10 Eugene McQuillan, Municipal Corporations §29.02, at 246-47 (3d ed. 1990). Section 31 aspires to put towns and cities “upon a sound financial basis so far as these ends can be achieved by legislation . . . and the prohibitions of such an act must not be weakened, nor the exceptions enlarged, by constructions which might tend to break down the safeguards designed to be set up or to admit of the evils intended to be prevented.” McCarthy v. Malden, 303 Mass. 563, 567 (1939).
In accordance with these important objectives, pursuant to c. 44 §31, a town’s contractual liability is strictly limited to the prior amount appropriated for the particular contract, and any contract made by a town’s board of selectmen without a specific appropriation to support it is invalid. Rich & Son Construction Co., Inc. v. Saugus, 355 Mass. 304, 306-07 (1969).[2]
It is well established in Massachusetts that persons dealing with a town or city “must take notice of limitations of this kind upon the contracting power of the municipality and are bound by them and cannot recover upon contracts attempted to be made in violation of them.” Duff v. Southbridge, supra at 228 (citations omitted). Moreover, this is so even where the party contracted with the town or city or performed the contract in good faith anticipation of a later appropriation. Arthur R. Murphy. A.I.A. & Associates, Inc. v. Brockton, 364 Mass. 377, 381 (1973). Itis undisputed that the Town failed to appropriate specific funds for the restoration of the stone wall, so that the alleged contract contained in the 1972 letter is unenforceable as a matter of law.[3]
Moreover, the cases cited by Govoni do not alter the conclusion that the 1972 letter is unenforceable due to the lack of a prior appropriation. For example, Reynolds Bros., Inc. v. Town of Norwood cited by Govoni in support of the enforceability of the alleged contract, concerned the situation of a contractor who “does work pursuant to a contract that is covered by an appropriation and suffers damages, not contemplated or covered by the appropriation, due to the municipality’s breach of the contract.” Id., 419 Mass. 295, 298-99 (1992) (emphasis added). The court in that case concluded that “if Norwood appropriated the necessary funds to cover the construction contract here, as we conclude it did G.L.c. 44, §31, does not present an obstacle to Reynold’s recovery of interest” on the contract. Id (emphasis added).
Similarly, in Boston Teachers Union, Local 66 v. School Committee of Boston, the city entered into a three-year collective bargaining agreement with the Teacher’s Union, as authorized by G.L.c. 150E, §7, which provided salary increases for teachers in the second and third years of the contract. Id, 386 Mass. 197, 200-01 (1982). The city argued that the salary increases were unenforceable because the city council had not made a specific appropriation for such increases. Id at 203. The court rejected that argument, interpreting c. 150E, §7 to require an initial approval of an agreement followed by appropriations as a matter of course in the succeeding years of the contract. The court concluded that an appropriation funding the first year of the contract was, in effect, approval by the city of the entire contract, rendering the salary increase valid despite the lack of prior appropriations for years two and three of the contract. Id. at 204. It is clear that the discussions in both Reynolds Bros, and Boston Teachers Union presuppose a contract for which a prior appropriation was initially made and thus these cases do not aid the plaintiff in the present case.[4]
Govoni further relies on the statement of the Supreme Judicial Court in Boston Teachers Union that “(w]hen the power of a municipality to enter into certain types of contracts would be unreasonably restricted by requiring it to appropriate at the inception of the contract the entire amount owed under future years, the prohibition on expenditures in excess of appropriations will not be held to invalidate the contract.” Id., 386 Mass. 197, 208 (1982). Govoni notes that although the Town took the land by eminent domain in 1967 for the widening of Middle Road, the actual project to widen the road did not commence until some 23 years later. In such a situation, it would be unreasonable to require the Town to appropriate a specific sum for the contract, because it was unclear at the time of the 1972 letter exactly when in the future *123 the road construction would occur, and uncertain precisely what the expense of restoring the stone wall would be at the time of performance.
However pragmatic and appealing this argument may be, a careful examination of Boston Teachers Union reveals that the cases in which the court has upheld as valid future contract expenditures not covered by a prior appropriation uniformly involve multi-year contracts specifically authorized by either the general laws or by particular town charters. Id.., 386 Mass. 197 (1982) (future salary advances under three-year agreement valid although no specific-appropriation for the advances made at time of contract; collective bargaining agreement authorized by G.L.c. 150E, §7). See also Clarke v. Fall River, 219 Mass. 580, 586 (1914) (all expenditures under five-year garbage contract need not be appropriated at the start of the contract in order to be valid; five-year contract authorized by town’s charter); Salisbury Water Supply Co. v. Salisbury, 341 Mass. 42, 49 (1960) (all sums expended under a twenty-year contract to supply water to the town need not have been appropriated at the inception of the contract; contract authorized by special act of Legislature); Lynn Redevelopment Authority v. Lynn, 360 Mass. 503, (1971) (long-term development contract not invalid because entire cost of project was not appropriated at the beginning of the contract; contract authorized by G.L.c. 121, §26). Further, these cases are consistent with G.L.c. 40, §4 which enumerates the types of contracts which a town may enter into for terms of between three and thirty years and provides that “ [n] otwithstanding any contraiy provision of any law or the provisions of any charter, cities and towns shall not be exempt from liability on such contracts.” G.L.c. 40, §4 (1994) (mentioning garbage, water, and development contracts).
According to the Supreme Judicial Court, what connects these cases is that the contracts in question were to fulfill the “constantly recurring duties” of a municipality. Arthur R. Murphy, A.I.A. & Associates, Inc. v. Brockton, supra at 379. The mere fact that a contract contemplates a relationship lasting more than one year, or that one phase of performance under the contract is to occur in the future does not make the contract one of constantly recurring duties. Id. Rather, the municipal function that is the subject of the contract must be continuous in the sense that it “require(s) for its fulfillment action by the city or the contractor day in and day out, permanently.” Id. It is obvious that a contract by the Town to construct a stone wall on one resident’s property is not a constantly recurring duty as contemplated by case precedent. See Arthur R. Murphy, A.I.A. & Associates, Inc. v. Brockton, supra at 379-80 (holding that a contract for the building of a public school is not a constantly recurring duty, and that contractor cannot recover for work for which there was no appropriation).
Thus, future expenditures by a town or city pursuant to a contract are valid although not covered by a prior appropriation only in the unique and limited situation where a municipality has entered into a multi-year contract, specifically authorized by its charter or by the general laws, concerning one of its constantly recurring duties. There is no precedent for upholding the validity of the contract in the present case despite the lack of appropriation of specific funds by the Town. The Boston Teachers Union and Reynolds Bros, cases do not abrogate the fundamental requirement contained in G.L.c. 44, §31 that a contract made by a town or city is valid only when supported by a specific prior appropriation, and Govoni, having failed to produce any evidence that the Town appropriated funds to restore her stone wall, cannot enforce the 1972 letter against the Town even assuming that it is a valid contract in all other respects. Although this result is harsh, it represents the reasoned judgment of the Legislature that “the welfare and protection of the taxpayers and residents of the municipality are of more importance than the dispensation of justice to a private party in a particular case.” 10 Eugene McQ-uillan, Municipal Corporations §29.02, at 247 (3d ed. 1990). Accordingly, the Town is entitled to judgment as a matter of law on the breach of contract claim.
2. Challenge to the Order of Taking
Count II of the complaint alleges that the Town failed to adequately compensate Govoni for the land taken under the 1967 Order. In enacting Chapter 79 of the General Laws, the Legislature intended to create an exclusive statutory remedy for eminent domain takings, and the limitations periods expressed therein are designed to limit the right as well as the remedy. Whitehouse v. Sherborn, 11 Mass.App.Ct. 668, 673 (1981). Chapter 79, Section 3 states that a property owner’s right to seek damages for a taking vests upon the recording of the order of taking in the registry-of deeds. G.L.c. 79, §3 (1994). Section 14 provides that a property owner in whom such a right has vested may petition for the assessment of damages to the Superior Court of the county in which the property taken was situated. G.L.c. 79, §14 (1994). Finally, Section 16 establishes the time for filing claims, and the version in effect in 1967 required that a petition for the assessment of damages be filed within two years after the right to such damages vested.[5]
It is well established that the period for filing set forth in c. 79, §16 applies not only to disputes over the existence or validity of a taking and whether damages have been inflicted, but to controversies about the amount of compensation as well. Eldredge v. Board of Selectmen of Brewster, 18 Mass.App.Ct. 502, 504 (1984). The policy underlying the rigorous application of the statute of limitations contained in Section 16 is “the need for an efficient and final determination of any dispute regarding a public landtaking, so that title to the land taken can be settled, damages for the taking assessed, and the construction of the public improvement undertaken and completed.” Id, at 506-07. It is undisputed that the Order in this case was recorded in the Bristol *124 Registry of Deeds on August 15, 1967, vesting Govoni’s right to seek damages and commencing the period for filing a petition. Govoni’s attempt to challenge the compensation awarded under the Order 27 years later must fail as a matter of law. Because any claim under c. 79, §16 is clearly time-barred, the Town is entitled to judgment as a matter of law.
3. Claim for a Taking In Pais
In addition, Count III of the complaint alleges a taking in pais under c. 79, §10. Section 10 allows a plaintiff to recover damages when his real estate has been taken for the public use or damaged by the construction, maintenance, operation, alteration, repair, or discontinuance of a public improvement, but the taking or damage was not “effected by or in accordance with a formal vote or order of a body politic duly authorized by law.” G.L.c. 79, §10 (1994). Govoni alleges that after dismantling the stone wall, the Town dumped and abandoned piles of rocks on land owned by her but not subject to the 1967 Order, thus effecting a taking in pais -without compensation.
Section 10 of Chapter 79, governing in pais claims, provides that in the case of a specific taking, entry, seizure or other act causing destruction or damage concerning the owner of the use of his property, the right to damages shall vest on the date of the specific act, and a petition for the award of damages may be filed within one year from that date, “otherwise, damages shall be assessed with respect to any parcel of property as of the date when such property was first injuriously affected, the right thereto shall vest upon the completion of the public improvement which caused the injury, and a petition for an award of damages therefor under this section may be filed within one year after such completion.” G.L.c. 79, §10 (1994). It is undisputed that the Town completed the Middle Road project on April 2,1993 Thus, even viewing the facts in the light most favorable to Govoni and assuming that her claim is one which vested upon the completion of the public improvement, Count III of the complaint, filed on July 20, 1994 is not timely. The in pais claim is barred by the statute of limitations in c. 79, §10, entitling the Town to judgment as a matter of law.
4. Fraud Claim
Finally, Count IV of the complaint alleges that the Town “with intent to defraud, made statements that were false, that it knew were false, that Plaintiff relied upon, that Defendant intended Plaintiff to rely upon and on account of which reliance Plaintiff was damaged in that her wall was not rebuilt [and] she was induced to sign a release without consideration.” The Town moves for summaiyjudgment on this claim on the grounds that it possesses sovereign immunity from suit for fraud.
The Massachusetts Tort Claims Act, Chapter 258 of the General Laws, effected a waiver of the doctrine of sovereign immunity in certain tort actions against the Commonwealth, cities, towns, and other governmental subdivisions. Spring v. Geriatric Authority of Holyoke, 394 Mass. 274, 285 (1985); Tilton v. Franklin, 24 Mass.App.Ct. 110, 112 (1987). However, chapter 258, § 10(c) excepts from the coverage of the Act “any claim arising out of an intentional tort, including . . . misrepresentation, deceit, invasion of privacy, interference with advantageous relations or interference with contractual relations.” G.L.c. 258, §10(c) (1994). Although Govoni characterizes her cause of action as “fraud” rather than “misrepresentation” or “deceit,” the Supreme Judicial Court has interpreted the language of § 10(c) as excluding all intentional torts from the coverage of the Mass Tort Claims Act. Connerty v. Metropolitan District Commission, 398 Mass. 140, 149 n.8 (1986). Thus, the defense of sovereign immunity has not been waived with respect to intentional torts, and as at common law, government employers such as the Town cannot be held liable for the intentional torts of their employees. Spring v. Geriatric Authority of Holyoke, supra at 285; Molinaro v. Northbridge, 419 Mass. 278, 279 (1995). The Town is immune from liability for any fraud allegedly committed with respect to Govoni’s signing of the 1990 Right of Entry, and accordingly, the Town is entitled to judgment as a matter of law on Count IV of the complaint.
ORDER
For the foregoing reasons, the defendant’s motion for summary judgment is ALLOWED on all four counts of the complaint.

This court indicated at oral argument that it might consider the additional depositions of Paul Mathieu and Robert Ronohan, sought to be introduced by the plaintiff. However, upon further reflection, it is improbable that either of these depositions could produce relevant facts affecting the outcome of the present motion for summary judgment, the resolution of which depends purely on matters of law. This court notes that it has been extremely lenient in overlooking the plaintiffs repeated failure to comply with Mass.R.Civ.P. 56(e) and Superior Court Rule 9A.

This result is also supported by G.L.c. 40, §4, governing a town’s power to contract, which states that a “city or town may not contract for any purpose, on any terms, or under conditions inconsistent with any applicable provision of any general or special law.” G.L.c. 40, §4 (1994). Thus, under c. 40, §4, a town lacks authority to enter into a contract which violates c. 44, §31.

It should be noted that the unenforceability of the 1972 letter is in no way related to any perceived lack of authority by Mr. Portway to bind the Town contractually or to the lack of a record of a Board of Selectmen vote authorizing the contract to rebuild the stone wall. Even if there were a clear record of the Board’s decision to rebuild the wall, neither the Board itself nor any other Town official could bind the Town to such a contract without a prior appropriation of funds.

This court also notes that the Boston Teachers Union decision offers Govoni no support in this case because the city of Boston is specifically exempted from c. 44, §31, and because the Supreme Judicial Court in that case stressed that its decision dealt with “the unique system by which the Boston public school system is financed.” Id., 386 Mass. 197, 200 (1982).

The present version of Section 16, in effect since 1983, provides a period of three years for filing. G.L.c. 79, §16 (1994).