Fecteau, Francis R., J.

INTRODUCTION

The plaintiff, Southbridge Associates II, LLC (“Southbridge Associates”), brought this action against the defendant, the Town of Southbridge, Southbridge School Committee (the ‘Town”), seeking damages for breach of contract and declaratoiy relief stemming from the Town’s allegedly improper termination of a lease. The matter is before the court on the plaintiffs Motion for Summary Judgment and the defendant’s Cross Motion for Summary Judgment. For the following reasons, the plaintiffs motion is DENIED and the defendant’s motion is ALLOWED.

BACKGROUND

On September 10, 2002, the Town issued an Invitation for Proposals (“IFP”) for the lease of classroom/office space to house the Southbridge Alternative Middle and High School. On October 18, 2002, Southbridge Associates submitted a proposal in response to the IFP under which it proposed leasing to the Town approximately 18,079 square feet of space located on the second floor at 80 Optical Drive in *32 Southbridge (the “Premises”). The proposal stated that Southbridge Associates intended to complete certain work on the Premises “in order to meet the bid requirements.” This work included making the building handicap accessible, “[renovating] approximately 2200 square feet of space on the second floor to meet the recreation requirements” and “[enclosing] outside green space adjacent to the building to meet the playground space requirements.” The Proposal also contained a rent schedule consisting of annually increasing payments, with the lowest annual and monthly payments occurring in Year 1 of the lease.[2]
The Town voted to accept the Proposal and award the lease to Southbridge Associates in April of 2003. After negotiating terms, the parties entered into a Lease in July 2003 (the “Lease”).[3] The base rent payable by the Town under the Lease mirrored the rent schedule contained in the Proposal.[4] The Lease contained no language regarding the Town’s right to terminate the Lease due to a lack of appropriated or available funds.[5] Prior to the commencement date of the Lease, Southbridge Associates completed the work needed “in order to meet the bid requirements,” as was described in the Proposal, at a cost of approximately $100,000.
On May 7, 2004, the Southbridge Superintendent of Schools submitted a copy of the School Department’s proposed budget for FY 2005 (the “Superintendent’s Proposed Budget”) to the Town Manager, the Town’s chief procurement officer. In the Superintendent’s Proposed Budget, the School Department designated $162,000 to fund the Lease and proposed a total budget of $25,157,352.
On May 24, 2004, on the Town Manager’s recommendation, the Town Council voted to raise and appropriate $19,755,000 for the Southbridge School Department for FY 2005, pending the Town Manager’s review of and recommendation of changes to the Superintendent’s Proposed Budget.[6] On June 18, 2004, the Town Manager submitted his recommended changes to the Town Council for its review and adoption. These changes included deletion of the School Department’s proposed funding for the Lease ($162,711) and adjustment of the total amount of the budget from $25,157,352 to $20,828,000. On June 29, 2004, the Town Council adopted the Town Manager’s recommended changes and voted to raise and appropriate an additional $1,073,000 for the FY2005 School Department budget, raising the total amount appropriated to the recommended $20,828,000. The School Committee subsequently voted unanimously to adopt the decision of the Town Council not to appropriate funds for the Lease.
The Town made all payments under the Lease until July 1, 2004. On July 19, 2004, the property manager for the Premises sent a notice of default to the Town. On July 21, 2004, the Town sent, through its counsel, written notice to Southbridge Associates that funds had not been appropriated for the Lease and that the Lease was, therefore, “terminated effective July 1, 2004" pursuant to G.L.c. 30B, § 12(d).

DISCUSSION

I. Standard of Review

A court should grant summary judgment where the record, including pleadings, depositions, answers to interrogatories, admissions on file and affidavits, shows that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); McGuinness v. Cotter, 412 Mass. 617, 620 (1992). The court must construe facts in the light most favorable to the non-moving party. Id. The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Pederson, 404 Mass, at 17. A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Tech. Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).

II. G.L.c. 30B

Southbridge Associates asserts that the Town breached the Lease when it stopped paying rent as of July 1, 2004. The Town contends that it did not breach the Lease but properly terminated the contract in accordance with the Uniform Procurement Act, G.L.c. 30B. Under Chapter 30B, a town’s procurement officer “shall not enter into a contract unless funds are available for the first fiscal year at the time of contracting. Payment and performance obligations for succeeding fiscal years shall depend on the availability and appropriation of funds.” G.L.c. 30B, § 12(a). “When funds are not appropriated or otherwise made available to support continuation of performance in a subsequent fiscal year, the procurement officer shall cancel the contract.” Id. at §12(d). “[A] contract made in violation of this chapter shall not be valid, and the governmental body shall make no payment under such contract.” Id. at § 17(b).

A. Appropriation of Funds

On May 24 and June 29, 2004, the Town Council, in accordance with the Town Manager’s recommendation, voted to raise and appropriate a total of $20,828,000 for the School Department’s budget, specifically excluding any funding for the Lease. Because money was not appropriated for the Lease, the Town argues that it was required to terminate the agreement *33 under G.L.c. 30B, § 12(d). While Southbridge Associates acknowledges that none of the funds appropriated for the School Department were earmarked for the Lease, they argue that, under G.L.c. 71, §34, which grants the School Committee authority to determine its own expenditures, the Town Manager’s suggested allocation of funds was no more than a “nonbinding monetary recommendation” that the School Committee was free to reject. Because the School Committee received $20,828,000 in appropriated finds and was free to allocate that money as it saw fit, the plaintiff contends that funding for the Lease was available and, therefore, G.L.c. 30B, § 12(d) is inapplicable. The court disagrees.
Under G.L.c. 71, §34:
The vote of the legislative body of a city or town shall establish the total appropriation for the support of public schools, but may not limit the authority of the school committee to determine expenditures within the total appropriation. (Emphasis added.)
This authority, however, is not absolute and school committees have been found to be subject to the limitations and requirements of statutes generally applicable to the municipal government. See School Committee of Gloucester v. City of Gloucester et al., 324 Mass. 209, 215 (1949), and cases cited. “Ordinary commercial contracts have never hitherto been held to belong in the field in which by long established policy and tradition school committees have exercised exclusive and untrammeled control.” Id. “In general, these are mere business transactions. They do not as a rule directly relate to methods of education or to the policy, conduct, regulation and discipline of the schools.” Eastern Massachusetts Street Railway Company v. Mayor of Fall River, 308 Mass. 232, 237 (1941). Where a statute does not “aim to circumscribe the school committee in the hiring of teachers, the details of curriculum, or other matters concerning the policy and discipline of the schools” but endeavors, “in the interests of sound business economy, ... to unify the control of the details of the city’s commercial transactions,” that statute can be binding on the school committee. School Committee of Gloucester, 324 Mass, at 218.
A town’s power to contract for the sale or acquisition of interests in real property is codifed in G.L.c. 40, §4.[7] The terms and conditions of such contracts must be authorized by the town council. Id. Under the Southbridge Town Charter, adopted pursuant to G.L.c. 43B, the Town Council elects the Town Manager, who serves as “the purchasing agent for all town departments including the school department" and shall be “responsible for purchasing all supplies, materials and equipment, and shall award all contracts for all departments and activities of the town under his supervision ...” Southbridge Home Rule Charter, §§4-4-7 and 6-8-1 (emphasis added).
Collectively, Chapter 40, §4, the Town Charter and Chapter 30B, §12 serve to centralize control of the Town’s commercial transactions in the Town Manager. Neither the statutes nor the Charter aim to circumscribe the School Committee on matters concerning the policy and discipline of the Town’s schools. See School Committee of Gloucester, 324 Mass, at 218 (finding that a local ordinance creating a centralized purchasing department to make purchases for city departments did not interfere with the traditional supremacy of the school committee in the field of education and did not deprive the committee of its power and obligation to purchase school supplies). Furthermore, the lease of private property to house an alternative special education program “bears only a secondary relation to education” and does not concern methods of education or the policy, conduct, regulation and discipline of the schools. See Eastern Massachusetts, 308 Mass, at 237 (finding statute requiring mayor’s approval for city contracts exceeding $500 did not unlawfully encroach on the school committee’s authority to contract for the transportation of school children under G.L.c. 40, §4 because such contracts are commercial in nature and do not directly relate to school regulation or policy). Accordingly, the Town Manager’s recommendation not to appropriate funds for the Lease, subsequently approved by the Town Council, was binding on the School Committee, which was not free to allocate a portion of its appropriation to the Lease. As sufficient funds for the Lease were not appropriated or otherwise made available, the contract was properly terminated in accordance with G.L.c. 30B, §12.

B. Prior Negotiations

Southbridge Associates argues that the Town cannot terminate the Lease pursuant to G.L.c. 30B, §12 because the Town specifically agreed to strike language from the Lease that would have allowed a lack of appropriated or available funds to serve as a cause for termination. However, “(t]hose who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to law.” Stadium Manor, Inc. v. Division of Administrative Law Appeals, 23 Mass.App.Ct. 958, 962, quoting Heckler v. Community Health Servs. of Crawford County, Inc., 467 U.S. 51, 63-64 (1984). “As a general rule, the law in existence at the time an agreement is executed necessarily becomes part of the agreement.” Mayor of Salem v. Warner Amex Cable Communications, Inc., 392 Mass. 663, 666 (1984), citing Feakes v. Bozyczko, 373 Mass. 633, 636 (1977). “(Piersons who deal with a governmental agency must take notice of limitations upon that agency’s contracting power and cannot recover upon a contract which oversteps those limitations.” White Constr. Co. v. Commonwealth, 11 Mass.App.Ct. 640, 648 (1981). See also Bowers v. Board of Appeals of Marshfield, 16 Mass.App.Ct. 29, 34 (1983), quoting Sancta Maria Hosp. v. Cambridge, *34 369 Mass. 586, 595 (1976) (“[t]hose who contract with the officers or agents of a governmental agency must, at their peril, ‘see to it that those officers or agents are acting within the scope of their authority’ ”). Accordingly, the language of G.L.c. 30B, §12 was part of the Lease by operation of law at the time it was executed and the Town did not have the authority to waive any of the statute’s requirements. Furthermore, Southbridge Associates is presumed to know the law and is, therefore, bound by the statute, regardless of whether or not there was specific language in the Lease to that effect. This is so even when a party contracts with a town in good faith anticipation of a later appropriation. Arthur R. Murphy, AIA & Assocs. v. Brockton, 364 Mass. 377, 381 (1973).

III. Indemnification

Southbridge Associates contends that the Town is required by Section 18 of the Lease to indemnify the plaintiff for loss of rent and other damages. Section 18, in pertinent part, states:
In the event that . . . Tenant shall default in the payment of any installment of rent. . . then Landlord shall have the right thereafter, while such default continues, to re-enter the premises and take complete possession of the Premises, to declare the Term ended, and remove the Tenant’s effects . . . Upon demand by Landlord, Tenant shall surrender to Landlord complete and peaceable possession of the Premises . . . Tenant shall indemnify Landlord against all loss or rent and other payments and expenses which Landlord may incur by reason of such termination during the residue of the Term. (Emphasis added.)
Section 18 requires the Town to indemnify Southbridge Associates in the event of a default. However, G.L.c. 30B, §12(d) was incorporated into the Lease by operation of law and permitted the Town to cancel the agreement if and when the necessary funds were not appropriated. Because G.L.c. 30B, § 12(d) required the Town to terminate the Lease, the Town’s premature cancellation of the Lease did not constitute a breach of the contract and Section 18 of the agreement is inapplicable.[8] To hold otherwise would essentially amount to an implicit nullification of G.L.c. 30B, §12 as it applies herein, granting the relief sought through a back door what the plaintiff cannot obtain through the front.

IV. Constantly Recurring Duties Exception

The Town contends that it is also prohibited from making payments on the Lease by G.L.c. 44, §31 which states that “(n]o department financed by municipal revenue ... shall incur liability in excess of the appropriation made for the use of such department.” Southbridge Associates argues that the Lease fits within the “constantly recurring duties” exception to G.L.c. 44, §31 and, therefore, the statute does not apply.
The “constantly recurring duties” exception permits municipalities to “validly enter into multi-year contracts for certain basic services, such as waste removal and utilities, even though those contracts obviously call for expenditure of unappropriated funds.” Browning-Ferris Industries, Inc. v. Swansea, 41 Mass.App.Ct. 383, 384-85, citing Clarke v. Fall River, 219 Mass. 580, 586 (1914). See also Salisbury Water Supply Co. v. Salisbury, 341 Mass. 42, 47 (1960). “When a town subsequently refuses to pay for these services as rendered, the lack of a sufficient appropriation is no defense.” Id. Constantly recurring duties are “continuous, requiring for their fulfillment action by the city or contractor day in and day out, permanently.” Arthur R. Murphy, 364 Mass. at 379.
Providing classroom space for an alternative special education program does not constitute a constantly recurring duty as that term has been defined by the courts. Cf. id. at 379 (finding that the building of schools, even where the contractor’s duties under the contract might continue for more than one year, is not a case of constantly recurring duties within the legal meaning that the courts have given that term). While the provision of public education may constitute a recurring municipal function, the acquisition of real property by way of a lease does not.

IV. Quantum Meruit

Southbridge Associates argues that even if G.L.c. 30B, §12 requires the premature termination of the Lease, it would be fundamentally unfair to permit the Town to terminate the Lease because, based on the Town’s failure to disclose the possibility of a future lack of funding, Southbridge Associates agreed to defer the bulk of the rent until the end of the Lease term.[9] The plaintiff is, however, barred from seeking equitable relief.
“The public interest in seeing legislative policies adhered to overrides any equitable considerations.” Dagastino v. Commissioner of Correction, 52 Mass.App.Ct. 456, 458 (2001) (internal citations omitted). “Where a contract is illegal by reason of failure to comply with statutoiy requisites, [the courts] will not allow recoveiy based on quantum meruit.” Massachusetts General Hospital v. Revere, 385 Mass. 772, 776 (1982), rev’d on other grounds, 463 U.S. 239 (1983), citing Lowell v. Massachusetts Bonding & Ins. Co., 313 Mass. 257, 272 (1943). “To do otherwise would, in effect, nullify the statutoiy scheme with respect to contracts with municipalities.” Id. citing McGovern v. Boston, 229 Mass. 394, 397-98 (1918).
Once the Town Council voted to not appropriate funds for the Lease, the Town Manager was required to terminate the contract under G.L.c. 30B, §12. Failure to terminate the Lease would have resulted in an illegal contract. Southbridge Associates is, therefore, prohibited from seeking recovery on equitable grounds. As already discussed above, those who contract with agents of the government “must, at their *35 peril, see to it that those officers or agents are acting within the scope of their authority.” Bowers v. Board of Appeals of Marshfield, 16 Mass.App.Ct. at 34 (emphasis added).

ORDER

For the foregoing reasons, it is hereby ORDERED that the plaintiffs Motion for Summary Judgment is DENIED and the defendant’s Cross Motion for Summary Judgment is ALLOWED.

The rent schedule contained in the Proposal was as follows:
Period Annual Monthly Rate PSF
Year 1 $72,316.00 $6,026.00 4.00
Year 2 $162,711.00 $13,559.00 9.05
Year 3 $253,106.00 $21,092.00 14.00
(Option Period) Year 4 $260,699.00 $21,725.00 14.42
(Option Period) Year 5 $268,520.00 $22,377.00 14.85

Southbridge Associates asserts that the lease had a commencement date of September 1, 2003. The Town disputes this date and argues that it is inconsistent with the language of the Lease. The copy of the Lease submitted jointly by the parties lists the ‘Term Commencement Date” as “[t]he earlier of (i) substantial completion of Landlord’s Work as described on Exhibit D or (ii) September 1, 2003. A draft copy of the Lease submitted by the Town lists the ’Term Commencement Date" as ‘‘[t]hc carlier-of-(i)-substantial completion of Landlord's Work-as -described on Exhibit B-or-(ii) July 14, 2003.”f

Southbridge Associates contends that the Lease’s rent schedule was structured to accommodate the Town’s request that a majority of the first-year rent and a portion of the second-year rent be deferred to the third and option years of the Lease, despite this resulting in Year 1 payments being below market value. The Town neither admits nor denies that this request was made but argues that the facts alleged are neither relevant nor material to any genuine issue and has moved to strike the alleged facts from the record.

Southbridge Associates alleges that the Town proposed including language allowing for the termination of the Lease due to a lack of appropriated funds but then later agreed to exclude it. The language allegedly suggested by the Town read as follows: This Lease shall be subject to the appropriation and availability of funds for this Lease. Absent an appropriation of funds for this Lease, the Tenant may terminate the Lease upon ten (10) days written notice to Landlord.” The Town disputes this fact and has moved to strike any reference to alleged prior or contemporaneous statements relating to the underlying contract negotiations as they are barred by the parol evidence rule.

Until the Town Manager had time to review, debate, approve and/or recommend changes to the Superintendent’s Proposed Budget, the Town Council voted to “level fund” the School Department for FY 2005, i.e. fund it at approximately the same amount as FY 2004.

“A city or town may make contracts for the exercise of its corporate powers, on such terms and conditions as are authorized by the town meeting in a town, the town council in a town without a town meeting, the city council in a city with the approval of the mayor or the city council in a Plan D or Plan E city with the approval of the manager, or as otherwise authorized in accordance with a duly adopted charter. A city or town may not contract for any purpose, on any terms, or under any conditions inconsistent with any applicable provision of any general or special law.” G.L.c. 40, §4-

The Town also argues that Section 18 of the Lease is unenforceable because it binds the Town to liabilities for which no funds have been appropriated in violation of G.L.c. 44, §31. Under G.L.c. 44, §31, “[n]o department financed by municipal revenue . . . shall incur liability in excess of the appropriation made for the use of such department.” Section 31, however, does not bar recovery of damages suffered as the result of a town’s breach of contract. See Reynolds Brothers, Inc. v. Norwood, 414 Mass. 295, 298-99 (1993) (“[A] contractor that does work pursuant to a contract that is covered by an appropriation and suffers damages, not contemplated or covered by the appropriations, due to the municipality’s breach of contract... is not barred from recovery” by G.L.c. 44, §31); Thomas O’Connor & Co. v. Medford, 16 Mass.App.Ct. 10, 12 (1983) (“General Laws c. 44, §31 relates to municipal finance and is not, we think, intended to extend the doctrine of municipal liability so as to leave contractors entirely without remedy for breach of contract in the absence of an appropriation”).

The plaintiff also contends that termination of the Lease would be unfair because Southbridge Associates spent approximately $100,000 on renovations to the building prior to the Town taking possession of the Premises. These renovations, however, as acknowledged by the plaintiff, were necessary “in order to meet the bid requirements” and make Southbridge Associates’ proposal responsive to the bid. The Town could not have awarded the contract to a non-responsive bid.